# EXHIBIT B

# 2026 -- S 3313

========
LC006499
========

# S T A T E   O F   R H O D E   I S L A N D

### IN GENERAL ASSEMBLY

### JANUARY SESSION, A.D. 2026

_____

A N   A C T

## RELATING TO FOOD AND DRUGS -- THE RHODE ISLAND CANNABIS ACT

Introduced By: Senators Bissaillon, and Acosta

Date Introduced: May 22, 2026

Referred To: Senate Judiciary

It is enacted by the General Assembly as follows:

SECTION 1. Sections 21-28.11-3, 21-28.11-7, 21-28.11-9, 21-28.11-10.2, 21-28.11-11, 21-28.11-12.1 and 21-28.11-17 of the General Laws in Chapter 21-28.11 entitled "The Rhode Island Cannabis Act" are hereby amended to read as follows:

**21-28.11-3. Definitions.**

For purposes of this chapter, the following words, terms and phrases shall have the following meanings:

(1) "Administrator" means the administrator of the cannabis office appointed by the governor pursuant to the provisions of § 21-28.11-18.1.

(2) "Adult use cannabis" or "recreational cannabis" means cannabis which may be legally possessed and consumed for non-medical purposes by a person who is at least twenty-one (21) years of age.

(3) "Applicant" means a ~~Rhode Island resident or a business entity with a principal place of business located in Rhode Island to include,~~ person or a business entity including, but not limited to, a corporation, limited liability company, limited liability partnership or partnership~~, and in which fifty-one percent (51%) of the equity in the business entity is owned by residents of Rhode Island, and the Rhode Island resident or business entity~~ who has made application for issuance of a license or certificate to own or engage in a cannabis business subject to the provisions of this chapter.

(4) "Cannabinoid'' means any of several compounds produced by cannabis plants that have

medical and psychotropic effects.

(5) "Cannabinoid profile" means amounts, expressed as the dry-weight percentages, of delta-9-tetrahydrocannabinol, cannabidiol, tetrahydrocannabinolic acid and cannabidiolic acid in a cannabis product. Amounts of other cannabinoids may be regulated by the commission.

(6) "Cannabis" or "marijuana" or "marihuana" means all parts of any plant of the genus cannabis not excepted herein, and whether growing or not; the seeds thereof; and resin extracted from any part of the plant; and every compound, manufacture, salt, derivative, mixture or preparation of the plant, its seeds or resin including tetrahydrocannabinol; provided, however, that "cannabis" shall not include:

(i) The mature stalks of the plant, fiber produced from the stalks, oil, or cake made from the seeds of the plant, any other compound, manufacture, salt, derivative, mixture or preparation of the mature stalks, fiber, oil or cake made from the seeds of the plant or the sterilized seed of the plant that is incapable of germination;

(ii) Hemp; or

(iii) The weight of any other ingredient combined with cannabis to prepare topical or oral administrations, food, drink or other products.

(7) "Cannabis accessories" or "marijuana accessories" means equipment, products, devices or materials of any kind that are intended or designed for use in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, ingesting, inhaling or otherwise introducing cannabis into the human body.

(8) "Cannabis advisory board" or "advisory board" means the cannabis advisory board established pursuant to the provisions of § 21-28.11-6.

(9) "Cannabis concentrate" means the resin extracted from any part of the plant of the genus cannabis and every compound, manufacture, salt, derivative, mixture or preparation of that resin but shall not include the weight of any other ingredient combined with cannabis to prepare cannabis products.

(10) "Cannabis control commission" or "commission" means the Rhode Island cannabis control commission established by § 21-28.11-4.

(11) "Cannabis cultivator" or "marijuana cultivator" means an entity licensed to cultivate, process and package cannabis, to deliver cannabis to cannabis establishments and to transfer cannabis to other cannabis establishments, but not to consumers.

(12) "Cannabis establishment" or "marijuana establishment" means a cannabis cultivator, cannabis testing laboratory, cannabis product manufacturer, cannabis retailer, hybrid cannabis

retailer or any other type of licensed cannabis-related business.

(13) "Cannabis office" means the office established pursuant to § 21-28.11-18.1.

(14) "Cannabis product manufacturer" or "marijuana product manufacturer'" means an entity licensed to obtain, manufacture, process and package cannabis and cannabis products, to deliver cannabis and cannabis products to cannabis establishments and to transfer cannabis and cannabis products to other cannabis establishments, but not to consumers.

(15) "Cannabis products" or "marijuana products" means products that have been manufactured and contain cannabis or an extract from cannabis, including concentrated forms of cannabis and products composed of cannabis and other ingredients that are intended for use or consumption, including edible products, beverages, topical products, ointments, oils and tinctures.

(16) "Cannabis retailer" or "marijuana retailer" means an entity licensed pursuant to § 21-28.11-10.2 to purchase and deliver cannabis and cannabis products from cannabis establishments and to deliver, sell or otherwise transfer cannabis and cannabis products to cannabis establishments and to consumers.

(17) "Cannabis testing laboratory'' means a third-party analytical testing laboratory that is licensed annually by the commission, in consultation with the department of health, to collect and test samples of cannabis and cannabis products pursuant to regulations issued by the commission and is:

(i) Independent financially from any medical cannabis treatment center or any licensee or cannabis establishment for which it conducts a test; and

(ii) Qualified to test cannabis in compliance with regulations promulgated by the commission pursuant to this chapter. The term includes, but is not limited to, a cannabis testing laboratory as provided in § 21-28.11-11.

(18) "Chairperson" means the chairperson of the cannabis control commission established pursuant to § 21-28.11-4.

(19) "Close associate" means a person who holds a legally recognized financial interest in, or is entitled to exercise power in, the business of an applicant or licensee and, by virtue of that interest or power, is able to exercise a significant influence over the management or operation of a cannabis establishment licensed under this chapter.

(20) "Consumer" means a person who is at least twenty-one (21) years of age, and who is authorized by law to consume or use cannabis.

(21) "Controlling person" means an officer, board member or other individual who has a financial or voting interest of ten percent (10%) or greater in a cannabis establishment.

(22) "Cultivation batch" means a collection of cannabis plants from the same seed or plant

stock that are cultivated and harvested together, and receive an identical propagation and cultivation treatment, including, but not limited to: growing media, ambient conditions, watering and light regimes and agricultural or hydroponic inputs. Every cannabis cultivator licensee shall assign and record a unique, sequential alphanumeric identifier to each cultivation batch for the purposes of production tracking, product labeling and product recalls.

(23) ~~"Disproportionately impacted area" means a census tract or comparable geographic area that satisfies at least one of the following criteria as determined by the commission, that:~~

~~(i) The area has a poverty rate of at least twenty percent (20%) according to the latest federal decennial census;~~

~~(ii) Seventy-five percent (75%) or more of the children in the area participate in the federal free lunch program according to reported statistics from the Rhode Island board of education;~~

~~(iii) At least twenty percent (20%) of the households in the area receive assistance under the Supplemental Nutrition Assistance Program (SNAP);~~

~~(iv) The area has an average unemployment rate, as determined by the Rhode Island department of labor and training, that is more than one hundred twenty percent (120%) of the national unemployment average, as determined by the United States Department of Labor, for a period of at least two (2) consecutive calendar years preceding the date of the application; or~~

~~(v)(A) The area has disproportionately high rates of arrest, conviction, and incarceration related to the sale, possession, use, cultivation, manufacture, or transportation of cannabis in comparison to other communities and localities in the state; or~~

~~(B) The area has a history of arrests, convictions, and other law enforcement practices in a certain geographic area, such as, but not limited to, precincts, zip codes, neighborhoods, and political subdivisions, reflecting a disparate enforcement of cannabis prohibition during a certain time period, when compared to the remainder of the state.~~

~~(vi) The commission shall, with recommendations from the cannabis advisory board and the chief equity officer, issue guidelines to determine how to assess which communities have been disproportionately impacted and how to assess if someone is a member of a community disproportionately impacted.~~

(24) "Final issuance of the commission's rules and regulations" means the rules and regulations adopted by the commission after compliance with requirements of chapter 35 of title 42 (the "administrative procedures act") and chapter 46 of title 42 (the "open meetings act") and shall not include any emergency, provisional or interim rules, regulations, requirements, orders, instructions or procedures.

(25) "Finished cannabis" means a usable cannabis, cannabis resin or cannabis concentrate.

(26) "Hemp" means the plant of the genus cannabis or any part of the plant, whether growing or not, with a delta-9-tetrahydrocannabinol concentration that does not exceed three tenths of one percent (0.3%) on a dry weight basis of any part of the plant of the genus cannabis, or per volume or weight of cannabis product, or the combined per cent of delta-9-tetrahydrocannabinol and tetrahydrocannabinolic acid in any part of the plant of the genus cannabis regardless of moisture content.

(27) "Host community" means a municipality in which a cannabis establishment or a medical cannabis treatment center is located or in which an applicant has proposed locating a cannabis establishment or a medical cannabis treatment center.

(28) "Hybrid cannabis retailer" or "hybrid compassion center" means a compassion center licensed pursuant to chapter 28.6 of this title that is in good standing with the department of business regulation and that has paid the fee pursuant to § 21-28.11-10 and has been authorized to sell non-medical or adult use cannabis to consumers.

(29) "Laboratory agent" means a registered employee of a cannabis testing laboratory who transports, possesses or tests cannabis.

(30) "Licensee" means a person or entity licensed by the commission pursuant to the provisions of this chapter. Any business structure recognized under title 7, including, but not limited to, corporations, partnerships, limited partnerships, limited-liability companies, and workers' cooperatives, which is otherwise qualified, is eligible to be considered by the commission as an entity licensee.

(31) "Manufacture" means to compound, blend, extract, infuse or otherwise make or prepare a cannabis product.

(32) "Medical cannabis" means cannabis and cannabis products that satisfy the requirements of chapter 28.6 of this title and have been given the designation of "medical cannabis" or "medical marijuana" due to dose, potency and form. Medical cannabis products are only available for use by patient cardholders, and may only be sold to or possessed by patient cardholders, or their registered caregiver, or authorized purchaser in accordance with chapter 28.6 of this title. Medical cannabis may not be sold to, possessed by, manufactured by, or used by any person except as permitted pursuant to chapter 28.6 of this title.

(33) "Medical cannabis treatment center" or "Medical marijuana treatment center" includes a compassion center, a medical marijuana emporium, or marijuana establishment licensee who operates a treatment center, as defined in § 21-28.6-3.

(34) "Member of an impacted family" means an individual who has a parent, legal guardian, child, spouse, or dependent who, or was a dependent of an individual who, prior to the

effective date of this chapter May 25, 2022, was arrested for, charged with, convicted of, or adjudicated delinquent for any cannabis offense that is eligible for expungement has been decriminalized under this chapter or for an offense from another jurisdiction that is equivalent to an offense that has been decriminalized under this chapter.

(35) "Ownership and control" means ownership of at least fifty-one percent (51%) of the cannabis establishment, and control over the management and day-to-day operations of the cannabis establishment, and an interest in the capital, assets, and profits and losses of the cannabis establishment proportionate to percentage of ownership.

(36) "Process" or "processing" means to harvest, dry, cure, trim and separate parts of the cannabis plant by manual or mechanical means, except it shall not include manufacture as defined in this section.

(37) "Production batch" means a batch of finished plant material, cannabis resin, cannabis concentrate or cannabis-infused product made at the same time, using the same methods, equipment and ingredients. The commission shall require licensees to assign and record a unique, sequential alphanumeric identifier to each production batch for the purposes of production tracking, product labeling and product recalls. All production batches shall be traceable to one or more cannabis cultivation batches.

(38) "Residual solvent" means a volatile organic chemical used in the manufacture of a cannabis product and that is not completely removed by practical manufacturing techniques.

(39) "Social equity applicant" means an applicant that has with at least fifty-one percent (51%) ownership and control by one or more individuals who can show that they have been disproportionately impacted by criminal enforcement of marijuana cannabis laws, including individuals convicted of nonviolent marijuana offenses, immediate family members of individuals convicted of nonviolent marijuana offenses and individuals who have resided in disproportionately impacted areas for at least five (5) of the last ten (10) years, as determined by the commission after consultation with the cannabis advisory board, and further specified in the rules and regulations that shall identify factors and other considerations to be evaluated in certifying applicants as social equity applicants, provided that such applicants shall at a minimum meet that in one of the following criteria ways:

(i) An applicant with at least fifty-one percent (51%) ownership and control by one or more individuals who have resided for at least five (5) of the preceding ten (10) years in a disproportionately impacted area.

(ii) An applicant with at least fifty-one percent (51%) ownership and control by one or more individuals who:

(A) Have (i) Has been arrested for, convicted of, or adjudicated delinquent for any cannabis offense that is eligible for expungement has been decriminalized under this chapter; or

(ii) Has been arrested for, convicted of, or adjudicated delinquent for any cannabis offense from another jurisdiction that occurred prior to May 25, 2022, that is equivalent to an offense that has been decriminalized under this chapter; or

(B)(iii) Is a member of an impacted family.

(iii) For applicants with a minimum of ten (10) full-time employees, an applicant with at least fifty-one percent (51%) of current employees who:

(A) Currently reside in a disproportionately impacted area; or

(B) Have been arrested for, convicted of, or adjudicated delinquent for any offense that is eligible for expungement under this chapter or is a member of an impacted family.

(iv) Can demonstrate significant past experience in or business practices that promote economic empowerment in disproportionally impacted areas.

(v) Had income which does not exceed four hundred percent (400%) of the median income, as defined by the commission, in a disproportionally impacted area for at least five (5) of the past ten (10) years.

(40) "Terpenoid" means an isoprene that are the aromatic compounds found in cannabis, including, but not limited to: limonene, myrcene, pinene, linalool, eucalyptol, Δ-terpinene, ß-caryophyllene, caryophyllene oxide, nerolidol and phytol.

(41) "Unreasonable and impracticable" means that the measures necessary to comply with the rules and regulations adopted pursuant to this chapter subject licensees to unreasonable risk or require such a high investment of money, time or any other resource or asset that a reasonably prudent businessperson would not operate a cannabis establishment.

(42) "Workers' cooperative" means an applicant organized and operated pursuant to the provisions of chapter 6.2 of title 7.

**21-28.11-7. Licensed cannabis cultivators.**

(a) Except as provided pursuant to the provisions of subsection (b) of this section or § 21-28.11-8, there shall be a moratorium on the issuance of new cannabis cultivator licenses until the date that is two (2) years following the final issuance of the commission's rules and regulations pursuant to the provisions of this chapter. This moratorium shall not apply to cannabis cultivators licensed pursuant to chapter 28.6 of this title on or before enactment of this chapter.

(b) On August 1, 2022 and thereafter, any medical marijuana cultivator licensed or approved pursuant to the provisions of § 21-28.6-16, upon payment of an additional license fee, shall be permitted to cultivate, manufacture and process cannabis as a hybrid cannabis cultivator

for both adult use and medical use. The amount of the additional license fee shall be determined by the office of cannabis regulation during the transitional period established by § 21-28.11-10 and shall be subject to review by the commission pursuant to the final rules and regulations. The fee shall be deposited in the social equity fund established in § 21-28.11-31. Sale of the cultivated cannabis shall be made directly to a licensee pursuant to the provisions of this chapter and chapter 28.6 of this title, subject to the following conditions:

(1) The cultivator must be in good standing and maintain the cultivator license pursuant to the provisions of chapter 28.6 of this title; and

(2) The cultivator must make good faith efforts to ensure the adult use cannabis production portion of the cultivation operation has no significant adverse effect on the medical marijuana program and patient needs.

(c) During the moratorium pursuant to this section, the commission, with the assistance of the advisory board, as required, shall submit a report to the general assembly which evaluates the cultivation of adult use and medical cannabis. The report shall consider factors, including, but not limited to:

(1) Cultivation and production history;

(2) Tax payment history;

(3) Existing inventory and inventory history;

(4) Sales contracts;

(5) Current and future projected market conditions; and

(6) Any other factors relevant to ensuring responsible cultivation, production, and inventory management for both medical and adult use cannabis.

(d) Upon expiration of the moratorium pursuant to this section, the commission may adopt rules and regulations authorizing issuance of additional cultivator licenses; provided, however, a new cultivator licensee's canopy shall not exceed ten thousand square feet (10,000 ft2). In determining whether to issue additional cultivator licenses, the cannabis control commission shall consider the findings of the report submitted pursuant to subsection (c) of this section.

(e) For the purposes of this section, "canopy" means the total surface area within a cultivation area that is dedicated to the cultivation of mature cannabis plants. The surface area of the canopy must be calculated in square feet and measured using the outside boundaries of the area and must include all of the area within the boundaries. If the surface area of the canopy consists of noncontiguous areas, each component area must be separated by identifiable boundaries. If a tiered or shelving system is used in the cultivation area, the surface area of each tier or shelf must be included in calculating the area of the canopy. The canopy does not include the areas within the

cultivation area that are used to cultivate immature cannabis plants and seedlings and that are not used at any time to cultivate mature cannabis plants.

(f) To qualify for issuance of any cannabis cultivator license under subsection (d) of this section, an applicant shall satisfy all requirements and qualifications established by the commission to include but not limited to, the following:

(1) Apply for a license in a manner prescribed by the commission;

(2) Provide proof that the applicant is twenty-one (21) years of age or older and is a resident of the state with a valid form of government issued identification;

(3) Undergo a criminal record background check pursuant to § 21-28.11-12.1 and on any terms established by the commission;

(4) Provide proof that the applicant is current with and in compliance with all obligations required by the division of taxation, including filings and payment of taxes;

(5) Has provided a nonrefundable application fee as determined by the commission;

(6) Shall consent and be subject to inspections by the commission for the purposes of ensuring and enforcing compliance with this chapter and all rules and regulations promulgated pursuant to this chapter; and

(7) Prior to the issuance of any license and for any period of renewal, the applicant shall submit an annual license fee pursuant to subsection (b) of this section to be deposited in the social equity fund established in § 21-28.11-31.

(g) The commission may determine and adjust the application fee or annual license fee pursuant to the commission's rulemaking authority and in accordance with the provisions of chapter 35 of title 42.

(h) Every individual cannabis plant possessed by a licensed cannabis cultivator shall be catalogued in a seed-to-sale inventory tracking system. The commission shall review the current seed-to-sale tracking system utilized pursuant to chapter 28.6 of this title and promulgate new or additional regulations, as it deems appropriate. As of December 1, 2022, any cannabis tags issued to provide seed-to-sale inventory and tracking shall be issued without charge to patient cardholders and/or primary caregivers authorized to grow medical cannabis.

(i) Notwithstanding any other provisions of the general laws, the manufacture of cannabis using a solvent extraction process that includes the use of a compressed, flammable gas as a solvent by a licensed cannabis cultivator shall not be subject to the protections of this chapter.

(j) Cannabis cultivators shall sell cannabis only to an entity licensed pursuant to the provisions of this chapter or chapter 28.6 of this title.

(k) Cannabis cultivators shall be licensed to grow cannabis only at a location or locations

registered with and approved by the cannabis commission. The commission may promulgate regulations governing locations where cultivators are authorized to grow. Cannabis cultivators shall abide by all local ordinances, including zoning ordinances.

(*l*) As a condition of licensing, cannabis cultivators shall consent and be subject to inspection by the commission for the purposes of ensuring and enforcing compliance with this chapter and chapter 28.6 of this title, all rules and regulations promulgated pursuant to this chapter, and the provisions of § 28-5.1-14.

(m) Persons issued cultivator licenses shall be subject to the following:

(1) A licensed cannabis cultivator shall notify and request approval from the commission of any change in his or her name or address within ten (10) days of the change. A licensed cannabis cultivator who fails to notify the commission of any of these changes shall be subject to an administrative fine of no more than one hundred fifty dollars ($150), or other penalty as determined by the commission.

(2) When a licensed cannabis cultivator notifies the commission of any changes listed in this subsection, the commission shall issue the licensed cannabis cultivator a new license identification document after the commission approves the changes and receives from the licensee payment of a fee specified in regulations.

(3) If a licensed cannabis cultivator loses his or her license or certification document, he or she shall notify the commission and submit a fee specified in regulation within ten (10) days of losing the document. The commission shall issue a new license document with a new random identification number, upon receipt of payment of a fee promulgated in the rules and regulations not to exceed the amount of one hundred dollars ($100).

(4) A licensed cannabis cultivator has a continuing duty to notify the commission of any criminal conviction(s) that occurs after the issuance of a license or registration. A criminal conviction may not automatically result in suspension or revocation of a license, but shall be subject to § 21-28.11-12.1. The commission may suspend and/or revoke his or her license after the notification, pending a final determination of disqualification pursuant to § 21-28.11-12.1.

(5) If a licensed cannabis cultivator violates any provision of this chapter or regulations promulgated hereunder as determined by the commission, his or her issued license may be suspended and/or revoked.

(n) **Immunity.**

(1) No licensed cannabis cultivator shall be subject to: arrest; prosecution; search or seizure, except as authorized pursuant to §§ 21-28.11-20 and 21-28.11-27 and subsection (f)(6) of this section; or penalty in any manner, or denied any right or privilege, including, but not limited

to, civil penalty or disciplinary action by a business, occupational, or professional licensing board or entity, solely for acting in accordance with this chapter, chapter 28.6 of this title and rules and regulations promulgated by the commission.

(2) No principal officers, board members, agents, volunteers, or employees of a licensed cannabis cultivator shall be subject to arrest; prosecution; search or seizure, except as authorized pursuant to §§ 21-28.11-20 and 21-28.11-27 and subsection (f)(6) of this section; or penalty in any manner, or denied any right or privilege, including, but not limited to, civil penalty or disciplinary action by a business, occupational, or professional licensing board or entity, solely for working for or with a licensed cannabis cultivator to engage in acts permitted by this chapter, chapter 28.6 of this title and rules and regulations promulgated by the commission.

(3) No state employee or commission member shall be subject to arrest; prosecution; search or seizure, except as authorized pursuant to §§ 21-28.11-20 and 21-28.11-27; or penalty in any manner, or denied any right or privilege, including, but not limited to, civil penalty, disciplinary action, termination, or loss of employee or pension benefits, for any and all conduct that occurs within the scope of his or her employment regarding the administration, execution, and/or enforcement of this chapter, chapter 28.6 of this title and rules and regulations promulgated by the commission, and the provisions of §§ 9-31-8 and 9-31-9 shall be applicable to this section.

(o) Nothing in this section shall be construed as authorizing a cannabis cultivator to transfer or sell cannabis directly to a consumer. A direct sale or transfer from a cannabis cultivator to a consumer is prohibited and shall be grounds for revocation of license and criminal prosecution.

(p) A cannabis cultivator and all agents and employees of the cannabis cultivator shall comply with all rules adopted by the commission and other applicable laws.

(q) No cannabis or cannabis product shall be sold or otherwise marketed pursuant to this chapter that has not first been tested by a cannabis testing laboratory and determined to meet the commission's testing protocols issued pursuant to § 21-28.11-11. Cannabis cultivators shall be subject to any regulations promulgated by the commission that specify how marijuana shall be tested, including, but not limited to, potency, cannabinoid profile and contaminants. Cannabis cultivators shall be subject to any product labeling requirements promulgated by the commission or otherwise required by law.

(r) **License required.** No person or entity shall engage in activities described in this section without a cultivator license issued pursuant to this chapter.

**21-28.11-9. Cannabis product manufacturer or wholesaler.**

(a) A cannabis product manufacturer or processor or wholesaler that does not hold a cannabis cultivator's license shall have a cannabis product manufacturer's license issued by the

commission. A cannabis product manufacturer licensee may purchase cannabis from cultivators for processing and shall only transfer or sell cannabis products to other entities licensed pursuant to this chapter or chapter 28.6 of this title. A cannabis product manufacturer's licensee or processor or wholesaler shall report to the commission, pursuant to regulations, the purchase or acquisition and the sale or transfer of all cannabis and cannabis products.

(b) To qualify and hold a cannabis product manufacturer's license under this section the applicant shall satisfy all qualifications established by the commission to include, but not be limited to the following:

(1) Apply for a license in a manner prescribed by the commission;

(2) Provide proof that the applicant is twenty-one (21) years of age or older ~~and is a resident of the state~~ with a valid form of government issued identification;

(3) Undergo a criminal record background check pursuant to § 21-28.11-12.1 and on any terms established by the commission;

(4) Provide proof that the applicant is current and in compliance with all obligations for filings and payments for taxes with the division of taxation;

(5) Has provided a nonrefundable application fee as determined by the commission and promulgated by rules and regulations; and

(6) Prior to issuance of any license and for any period of renewal, the applicant shall submit an annual license fee as determined by the commission and promulgated by rules and regulations to be deposited in the social equity fund established in § 21-28.1-31.

(c) A cannabis product manufacturer or processor or wholesaler and all agents and employees shall comply with all rules adopted by the commission and all applicable laws.

(d) The commission may adjust the application fee or annual license fee pursuant to the commission's rulemaking authority and in accordance with the provisions of chapter 35 of title 42.

(e) As a condition of licensing, cannabis product manufacturers or processors or wholesalers shall consent and be subject to inspections by the commission for the purposes of ensuring and enforcing compliance with this chapter and all rules and regulations promulgated pursuant to this chapter, and pursuant to the provisions of § 21-28.11-20.

(f) Nothing in this section shall be construed as authorizing a cannabis product manufacturer or processor or wholesaler to transfer or sell cannabis to a consumer. A direct sale or transfer from a cannabis product manufacturer licensee to a consumer is prohibited.

(g) No cannabis or cannabis product shall be sold or otherwise marketed pursuant to this chapter that has not first been tested by a cannabis testing laboratory and determined to meet the commission's testing protocols issued pursuant to § 21-28.11-11.

(h) Persons issued cannabis product manufacturer's licenses shall be subject to the following:

(1) A licensed cannabis product manufacturer shall notify and request approval from the commission of any change in his or her name or address within ten (10) days of the change. A licensed cannabis product manufacturer who fails to notify the commission of any of these changes shall be subject to an administrative fine of no more than one hundred fifty dollars ($150) or other penalty as determined by the commission.

(2) When a licensed cannabis product manufacturer notifies the commission of any changes listed in this subsection, the commission shall issue the licensed cannabis product manufacturer a new registry identification document after the department approves the changes and receives from the licensee payment of a fee specified in regulation.

(3) If a licensed cannabis product manufacturer loses his or her document, he or she shall notify the commission and submit a fee specified in regulation not to exceed one hundred dollars ($100), within ten (10) days of losing the document. The commission shall issue a new license with a new random identification number.

(4) A licensed cannabis product manufacturer has a continuing duty to notify the commission of any criminal conviction(s) that occurs after the issuance of a license or registration. A criminal conviction relating solely to a cannabis offense shall not automatically result in suspension or revocation of a license, but shall be subject to § 21-28.11-12.1.

(5) If a licensed cannabis product manufacturer violates any provision of this chapter or regulations promulgated hereunder as determined by the commission, his or her issued license may be suspended and/or revoked in addition to any other enforcement action.

(i) **Immunity.**

(1) No licensed cannabis product manufacturer or wholesaler shall be subject to: arrest; prosecution; search or seizure, except as authorized pursuant to §§ 21-28.11-20 and 21-28.11-27 and by subsection (e) of this section; or penalty in any manner, or denied any right or privilege, including, but not limited to, civil penalty or disciplinary action by a business, occupational, or professional licensing board or entity, solely for acting in accordance with this chapter, chapter 28.6 of this title and rules and regulations promulgated by the commission.

(2) No principal officers, board members, agents, volunteers, or employees of a licensed cannabis product manufacturer or wholesaler shall be subject to arrest; prosecution; search or seizure, except as authorized pursuant to §§ 21-28.11-20 and 21-28.11-27 and by subsection (e) of this section; or penalty in any manner, or denied any right or privilege, including, but not limited to, civil penalty or disciplinary action by a business, occupational, or professional licensing board

or entity, solely for working for or with a licensed cannabis product manufacturer or wholesaler to engage in acts permitted by this chapter, chapter 28.6 of this title or rules and regulations promulgated by the commission.

(3) No state employee or commission member shall be subject to arrest; prosecution; search or seizure, except as authorized pursuant to §§ 21-28.11-20 and 21-28.11-27 and by subsection (e) of this section; or penalty in any manner, or denied any right or privilege, including, but not limited to, civil penalty, disciplinary action, termination, or loss of employee or pension benefits, for any and all conduct that occurs within the scope of his or her employment regarding the administration, execution, and/or enforcement of this chapter, chapter 28.6 of this title and rules and regulations promulgated by the commission, and the provisions of §§ 9-31-8 and 9-31-9 shall be applicable to this section.

**21-28.11-10.2. Cannabis retail sales.**

(a) In addition to the hybrid cannabis retailer certificates that may be issued pursuant to the provisions of this chapter, after issuance of the final rules and regulations, the commission may grant twenty-four (24) retail licenses, subject to the following restrictions:

(1) The retail licenses shall be issued pursuant to geographic zones as specified in § 21-28.11-10.3.

(2) No more than four (4) retail licenses exclusive of any hybrid cannabis retail certificate shall be permitted in each geographic zone; and

(3) Of the four (4) retail licenses in each geographic zone:

(i) One shall be reserved for a workers' cooperative applicant; and

(ii) One shall be reserved for a social equity applicant.

(b) **Minimum qualifications.** To qualify for issuance of a cannabis retail sales license under this section, an applicant shall satisfy all qualifications established by the commission to include, but not be limited to, the following:

(1) Apply for a license in a manner prescribed by the commission;

(2) Provide proof that the applicant is twenty-one (21) years of age or older and is a resident of the state with a valid form of government issued identification;

(3) Undergo a criminal record background check pursuant to § 21-28.11-12.1 and on any terms established by the commission;

(4) Provide proof that the applicant is current and in compliance with all obligations for filings and payments for taxes with the division of taxation;

(5) Demonstrate that the proposed location for the retail sale of cannabis complies with provisions of municipal zoning and regulations or has been approved by the municipality;

(6) Paid a nonrefundable application fee as determined by the commission and promulgated by rules and regulations; and

(7) Prior to issuance of any license and for any period of renewal, the applicant shall pay an annual fee of thirty thousand dollars ($30,000) to be deposited in the social equity fund established in § 21-28.11-31.

(c) **Compliance.** A cannabis retail sales licensee and all agents and employees shall comply with all rules adopted by the commission and all applicable laws to include, but not limited to, chapter 5 of title 28 (the "fair employment practices act").

(d) **Inspection.** As a condition of licensing and pursuant to § 21-28.11-20, cannabis retailers shall consent and be subject to inspections by the commission or designated personnel for the purposes of ensuring and enforcing compliance with this chapter, all rules and regulations promulgated pursuant to this chapter and all other applicable law, to include, but not be limited to, the provisions of title 44 ("taxation"), chapter 28 of this title (the "uniform controlled substance act"), and chapter 5 of title 28 (the "fair employment practices act").

(e) **Testing.** No cannabis or cannabis product shall be sold or otherwise marketed pursuant to this chapter that has not first been collected and tested by a cannabis testing laboratory and found to meet the testing protocols issued pursuant to regulations promulgated by the department of health and determined to meet the commission's testing protocols issued pursuant to § 21-28.11-11.

(f) **Minimum requirements.** Persons issued cannabis retail licenses shall be subject to the following:

(1) A licensed cannabis retailer shall notify and request approval from the commission of any change in his or her name or address within ten (10) days of the change. A licensed cannabis retailer who fails to notify the commission of any of these changes shall be subject to an administrative fine of no more than one hundred fifty dollars ($150) or other penalty as determined by the commission;

(2) When a licensed cannabis retailer notifies the commission of any changes listed in this subsection, the commission shall issue the licensed cannabis retailer a new license identification document after the commission approves the changes and receives from the licensee payment of a fee specified in regulation;

(3) If a licensed cannabis retailer loses his or her license document, he or she shall notify the commission and submit a fee specified in regulation within ten (10) days of losing the document. The commission shall issue a new license document with a new random identification number upon payment of a fee promulgated in the rules and regulations not to exceed one hundred dollars ($100);

(4) A licensed cannabis retailer has a continuing duty to notify the commission of any criminal conviction(s) that occurs after the issuance of a license or registration. A criminal conviction shall not automatically result in suspension or revocation of a license, but shall be subject to the provisions § 21-28.11-12.1;

(5) If a licensed cannabis retailer violates any provision of this chapter or regulations promulgated hereunder as determined by the commission, his or her issued license may be suspended and/or revoked.

(g) **Immunity.**

(1) No licensed cannabis retailer shall be subject to: arrest; prosecution; search or seizure, except as authorized pursuant to §§ 21-28.11-20 and 21-28.11-27 and by subsection (d) of this section; or penalty in any manner, or denied any right or privilege, including, but not limited to, civil penalty or disciplinary action by a business, occupational, or professional licensing board or entity, solely for acting in accordance with this chapter and rules and regulations promulgated by the commission.

(2) No principal officers, board members, agents, volunteers, or employees of a licensed cannabis retailer shall be subject to arrest; prosecution; search or seizure, except as authorized pursuant to §§ 21-28.11-20 and 21-28.11-27 and by subsection (d) of this section; or penalty in any manner, or denied any right or privilege, including, but not limited to, civil penalty or disciplinary action by a business, occupational, or professional licensing board or entity, solely for working for or with a licensed cannabis retailer to engage in acts permitted by this chapter and rules and regulations promulgated by the commission.

(3) No state employee or commission member shall be subject to arrest; prosecution; search or seizure, except as authorized pursuant to §§ 21-28.11-20 and 21-28.11-27 and by subsection (d) of this section; or penalty in any manner, or denied any right or privilege, including, but not limited to, civil penalty, disciplinary action, termination, or loss of employee or pension benefits, for any and all conduct that occurs within the scope of his or her employment regarding the administration, execution, and/or enforcement of this chapter and rules and regulations promulgated by the commission, and the provisions of §§ 9-31-8 and 9-31-9 shall be applicable to this section.

**21-28.11-11. Cannabis testing laboratories — Licensure and oversight.**

(a) In consultation with the department of health, the commission shall have authority to promulgate regulations to create and implement all licenses involving cannabis reference testing requirements, including approval of laboratory proficiency programs and proficiency sample providers, quality assurance sample providers, round robin testing and regulations establishing quality control and test standardization, and create and implement additional types and classes of

licensed cannabis testing facilities in accordance with regulations promulgated hereunder.

(b)(1) The regulations promulgated by the commission shall at a minimum provide for the licensure and oversight of cannabis testing laboratories, and shall establish testing protocols for the sampling, testing and analysis of cannabis, finished cannabis and cannabis products in consultation with the department of health. Such regulations shall be based on the most recent standards as issued by the United States Pharmacopeial Convention and shall address sampling and analysis to characterize the cannabinoid profile and biological and chemical contaminants, including, but not limited to, pesticides, herbicides, plant growth regulators, metals, microbiological contaminants, and residual solvents introduced through cultivation of cannabis plants and post-harvest processing and handling of cannabis, cannabis products and ingredients.

(2) No cannabis or cannabis product shall be sold or otherwise marketed pursuant to this chapter that has not first been tested by a cannabis testing laboratory and determined to meet the commission's testing protocols issued pursuant to subsection (a) of this section.

(3) A licensed cannabis testing laboratory shall transport, store, possess, and test cannabis in compliance with regulations promulgated by the commission. Nothing in this section shall be construed as authorizing a cannabis testing laboratory to transfer or sell cannabis to a consumer. A direct sale or transfer from a cannabis testing laboratory licensee to a consumer is prohibited.

(4) A cannabis testing laboratory shall report any results indicating contamination to the commission, the department of health and the department of environmental management within forty-eight (48) hours of identification.

(5) No laboratory agent or employee of a cannabis testing laboratory shall receive direct or indirect financial compensation, other than such reasonable contractual fees to conduct such testing, from any entity for which it is conducting testing pursuant to this chapter.

(6) No individual who possesses an interest in or is a laboratory agent employed by a cannabis testing laboratory, and no immediate family member of that individual, shall possess an interest in or be employed by a cultivator, product manufacturer or retail cannabis establishment.

(c) To qualify for issuance of a cannabis testing laboratory license under this section, an applicant shall satisfy all qualifications established by the commission to include, but not be limited to, the following:

(1) Apply for a license in a manner prescribed by the commission;

(2) Provide proof that the applicant is twenty-one (21) years of age or older ~~and is a resident of the state~~ with a valid form of government issued identification;

(3) Undergo a criminal record background check pursuant to § 21-28.11-12.1 and on any terms established by the commission;

(4) Provide proof that the applicant is current and in compliance with all obligations for filings and payments for taxes with the division of taxation;

(5) Provide a nonrefundable application fee as determined by the commission and promulgated by rules and regulations and apply for a testing license from the commission prior to testing, processing or transporting cannabis; and

(6) Prior to the issuance of any license and for any period of renewal, the applicant shall submit an annual license fee as determined by the commission and promulgated by rules and regulations.

(d) Cannabis testing laboratories shall be responsible for ensuring the following, as related to laboratory agents:

(1) A laboratory agent shall be registered with the commission prior to volunteering or working at a cannabis testing laboratory;

(2) A cannabis testing laboratory shall apply to the commission for a registration document for each affiliated laboratory agent by submitting, at a minimum, the name, address, and date of birth of the laboratory agent;

(3) A laboratory agent shall undergo a criminal background check pursuant to § 21-28.11-12.1 and on terms established by the commission, prior to volunteering or working at a cannabis testing laboratory. Laboratory agents shall also have a continuing duty to notify the commission of any criminal conviction(s) that occur after the issuance of a registration document. A criminal conviction shall not automatically result in suspension or revocation of registration, but shall be subject to § 21-28.11-12.1; and

(4) A cannabis testing laboratory shall notify the commission within one business day if a laboratory agent ceases to be associated with the laboratory, and the laboratory agent's registration document shall be immediately revoked.

(e) A cannabis testing laboratory and all agents and employees shall comply with all rules adopted by the commission and all applicable laws.

(f) As a condition of licensing and pursuant to the provisions of § 21-28.11-20, cannabis testing laboratories shall consent and be subject to inspection by the commission or personnel designated by the commission for the purposes of ensuring and enforcing compliance with this chapter and all rules and regulations promulgated pursuant to this chapter, to include, but not be limited to, the provisions of chapter 5 of title 28 (the "fair employment practices act").

(g) Persons issued cannabis testing laboratory licenses shall be subject to the following:

(1) A licensed cannabis testing laboratory shall notify and request approval from the commission of any change in his or her name or address within ten (10) days of the change. A

licensed cannabis testing laboratory who fails to notify the commission of any of these changes shall be subject to an administrative fine of no more than one hundred fifty dollars ($150) or other penalty as determined by the commission.

(2) When a licensed cannabis testing laboratory notifies the commission of any changes listed in this subsection, the commission shall issue the licensed cannabis testing laboratory a new registry identification document after the department approves the changes and receives from the licensee payment of a fee specified in regulation.

(3) If a licensed cannabis testing laboratory loses his or her license document, he or she shall notify the commission and submit a fee specified in regulation not to exceed the amount of one hundred dollars ($100), within ten (10) days of losing the license document. The commission shall issue a new license with a new random identification number.

(4) A licensed cannabis testing laboratory has a continuing duty to notify the commission of any criminal conviction(s) of a laboratory licensee or agent that occurs after the issuance of a license or registration. A criminal conviction relating solely to a cannabis offense shall not automatically result in suspension or revocation of a license, but shall be subject to § 21-28.11-12.1.

(5) If a licensed cannabis testing laboratory violates any provision of this chapter or regulations promulgated hereunder as determined by the commission, his or her issued license may be suspended and/or revoked.

(h) **Immunity.**

(1) No licensed cannabis testing laboratory licensee or agent shall be subject to: arrest; prosecution; search or seizure, except as authorized pursuant to §§ 21-28.11-20 and 21-28.11-27 and by subsection (f) of this section; or penalty in any manner, or denied any right or privilege, including, but not limited to, civil penalty or disciplinary action by a business, occupational, or professional licensing board or entity, solely for acting in accordance with this chapter, chapter 28.6 of this title and the rules and regulations promulgated by the commission.

(2) No principal officers, board members, agents, volunteers, or employees of a licensed cannabis testing laboratory shall be subject to arrest; prosecution; search or seizure, except as authorized pursuant to §§ 21-28.11-20 and 21-28.11-27 and by subsection (f) of this section; or penalty in any manner, or denied any right or privilege, including, but not limited to, civil penalty or disciplinary action by a business, occupational, or professional licensing board or entity, solely for working for or with a licensed cannabis cultivator to engage in acts permitted by this chapter, chapter 28.6 of this title and the rules and regulations promulgated by the commission.

(3) No state employee or commission member shall be subject to arrest; prosecution; search

or seizure, except as authorized pursuant to §§ 21-28.11-20 and 21-28.11-27 and by subsection (f) of this section; or penalty in any manner, or denied any right or privilege, including, but not limited to, civil penalty, disciplinary action, termination, or loss of employee or pension benefits, for any and all conduct that occurs within the scope of his or her employment regarding the administration, execution, and/or enforcement of this chapter, chapter 28.6 of this title and the rules and regulations promulgated by the commission. The provisions of §§ 9-31-8 and 9-31-9 shall be applicable to this section.

**21-28.11-12.1. Criminal record information — Permitted use.**

(a) The commission shall require all applicants for license and registration under this chapter to undergo a national criminal background check prior to issuing any license or registration. The applicant shall apply to the bureau of criminal identification of the department of attorney general, department of public safety division of state police, or local police department for a national background check that shall include fingerprints submitted to the Federal Bureau of Investigation. Upon the discovery of any criminal record information, the bureau of criminal identification of the department of attorney general, department of public safety division of state police, or the local police department shall inform the applicant, in writing, of the nature of the criminal record information. The bureau of criminal identification of the department of attorney general, department of public safety division of state police, or the local police department shall also inform the commission, in writing, of the nature of the criminal record information. In those situations in which no criminal record information has been found, the bureau of criminal identification of the department of attorney general, department of public safety division of state police, or the local police department shall inform the applicant and the commission, in writing, of this fact. The applicant shall be responsible for any expense associated with the national background check.

(b) All applicants for license or registration have a duty to truthfully and fully disclose prior criminal convictions to the commission and any information the commission requests related to said convictions. If issued a license or registration by the commission, licensees have a continuing duty to truthfully and fully disclose any subsequent criminal convictions to the commission, along with any information the commission requests related to said convictions. Failure to do so may result in the denial, suspension, or revocation of a license or registration, and criminal prosecution pursuant to § 21-28.11-27 and/or other applicable law.

(c) "Conviction" as used throughout this chapter shall have the same meaning as set forth in § 21-28.6-6(g).

(d) No person shall be automatically disqualified to practice, pursue, or engage in any

business or activity licensed or registered by the commission pursuant to the provisions of this chapter, solely relating to a prior conviction of a cannabis or marijuana possession crime or crimes unless:

(1) The underlying crime or crimes involved the distribution of a controlled substance, including cannabis or marijuana, to a minor; or

(2) The underlying crime or crimes substantially relates to the occupation to which the license or registration applies. Any other state law to the contrary will be superseded by this provision.

(e) No occupational license or registration issued by the commission shall be suspended or revoked, solely or in part, because of a prior or subsequent possession of cannabis or marijuana offense conviction of a crime or crimes unless the underlying crime or crimes substantially relate to the occupation to which the license or registration applies. Any other state law to the contrary will be superseded by this provision.

(f) A person who has been convicted of a crime may be disqualified to practice, pursue or engage in any business activity licensed by the commission pursuant to this chapter or chapter 28.6 of this title if the commission determines that the circumstances of the conviction are substantially related to the occupation for which the license or registration is sought. In determining if a conviction substantially relates to the occupation for which the license or registration is sought, the commission shall consider:

(1) The state's legitimate interest in protecting the property and the safety and welfare of specific individuals or the general public;

(2) The relationship of the crime or crimes to the ability, capacity, and fitness required to perform the duties and discharge the responsibilities of the position of employment or occupation; and

(3) The state's legitimate interest in equal access to employment for individuals who have had past contact with the criminal justice system.

(g) A person who has been convicted of a crime or crimes that substantially relates to the occupation for which a license is sought may not be automatically disqualified from the occupation if the person can establish by competent evidence, satisfactory in the discretion of the commission, of sufficient rehabilitation and present fitness to perform the duties of the occupation for which the license is sought. The commission shall consider the time elapsed since the conviction when determining sufficient rehabilitation, as well as any evidence presented by the applicant regarding:

(1) Completion of a period of at least two (2) years after release from imprisonment, or at least two (2) years after the sentencing date for a probation sentence or suspended sentence not

accompanied by incarceration, without subsequent conviction or pending criminal charge;

(2) The nature, seriousness, and relevance of the crime or crimes for which convicted;

(3) All circumstances relative to the crime or crimes, including mitigating circumstances surrounding the commission of the crime or crimes;

(4) The age of the person at the time the crime or crimes were committed;

(5) Claims that the criminal record information is in error or inadmissible; and

(6) All other competent evidence of rehabilitation and present fitness presented, including, but not limited to, letters of reference by persons who have been in contact with the applicant since the applicant's release from any state or federal correctional institution.

(h) The following criminal records may not be used in connection with any application for a license or registration submitted pursuant to the provisions of this chapter:

(1) Juvenile adjudications;

(2) Records of arrest not followed by a conviction;

(3) Convictions that have been, pursuant to law, annulled or expunged;

(4) Misdemeanor convictions for which no jail sentence can be imposed; or

(5) A conviction that does not substantially relate to the occupation for which the license or registration is sought, as determined by subsection (f) of this section.

(i) If the commission intends to deny, suspend, or revoke an occupational license, permit, or registration solely or in part because of the individual's prior conviction of a crime that is determined to be substantially related to the occupation for which the license or registration applies, the commission shall notify the individual in writing of the following prior to the final decision:

(1) The specific conviction(s) that forms the basis for the potential denial, suspension, or revocation and the rationale for deeming the conviction substantially related to the occupation or activity;

(2) A copy of the conviction history report, if any, on which the commission relies;

(3) A statement that the applicant may provide evidence of mitigation or rehabilitation, as described in subsection (g) of this section; and

(4) Instructions on how to respond to the potential denial, suspension, or revocation.

(j) After receiving the notice of potential denial, suspension, or revocation, the individual shall have thirty (30) business days to respond.

(k) If the commission denies, suspends, or revokes a license or registration solely or in part because of the applicant's substantially related conviction, the commission shall issue a final written decision that addresses the following:

(1) The specific conviction(s) that form the basis for the denial, suspension, or revocation

and the rationale for deeming the conviction(s) substantially related to the occupation or activity;

(2) A copy of the conviction history report, if any, on which the commission relies;

(3) The process for appealing the decision in accordance with chapter 35 of title 42; and

(4) The earliest date the person may reapply for license or registration which shall not be longer than two (2) years from the date of the final decision.

*(l)* Notwithstanding any general or special law to the contrary, except as otherwise provided in this chapter, any prior conviction for a cannabis crime that has been decriminalized, or is eligible for expungement pursuant to the provisions of this chapter under this chapter, or an offense from another jurisdiction that is equivalent to an offense that has been decriminalized under this chapter cannot serve as grounds, either solely or in part, for denial, suspension or revocation of a license or registration pursuant to this chapter.

(m) The commission shall adopt rules and regulations establishing standards and procedures consistent with the provisions of this section.

**21-28.11-17. No right to license.**

(a) Nothing contained in this chapter shall be construed as establishing a right in any person or entity to be issued a license, certification or certificate pursuant to this chapter.

(b) The commission shall exercise discretion to issue licenses and certificates to further the purposes of this chapter and may deny any application, suspend an application period, impose moratoriums on applications and/or issuance of licenses to further the purpose of public safety, the orderly administration of cannabis production, distribution and sale and to promote the purposes of this chapter.

(c) No appeal for a denial of a license shall be sustained solely on the grounds that the person or entity satisfied the qualifications for issuance of a license.

(d) The commission shall not be responsible for amounts expended by any person, applicant or entity in seeking certification or licensure.

SECTION 2. Chapter 21-28.11 of the General Laws entitled "The Rhode Island Cannabis Act" is hereby amended by adding thereto the following section:

**21-28.11-17.2. Nullification of prior social equity and retail license application processes; Reopening of applications; Limitation on liability.**

(a) As of the effective date of this section, the social equity certification and license application processes previously run by the commission are hereby rendered null and/or void.

(b) Within sixty (60) days following the effective date of this section the commission shall:

(1) Commence a new social equity certification process and begin accepting applications to certify social equity applicants.

(2) Institute a new retail license application process in accordance with this chapter. The commission shall refund any application fee amounts paid by an applicant for any prior retail license application process rendered null and/or void by this section.

(c)  The commission shall proceed with the new application, approval, and certification processes for social equity and cannabis retail sales licenses consistent with this chapter and all severable portions of any existing non-conflicting regulations.  The commission's new application, approval, and certification process(es) for social equity and cannabis retail sales licenses are not contingent upon the promulgation of new regulations to the extent those process(es) are compliant with this chapter and severable, non-conflicting portions of existing regulations. Any commission regulations in conflict with this chapter are hereby superseded to the extent of the conflict.

(d) No right of action shall exist on the grounds that a person, applicant or entity has previously but no longer satisfies the criteria for approved social equity applicant status.  The commission shall in no way be held liable for any amounts paid, costs or damages incurred in connection with any application or certification process rendered null and/or void under this section.

(e) No right of action shall exist in connection with social equity certification processes or license application periods rendered null and/or void due to legislative amendment.

SECTION 3. This act shall take effect upon passage.

========
LC006499
========

EXPLANATION

BY THE LEGISLATIVE COUNCIL

OF

A N   A C T

RELATING TO FOOD AND DRUGS -- THE RHODE ISLAND CANNABIS ACT

***

This act would amend sections of the Rhode Island Cannabis Act relative to proof of residency terminology, and would amend the definition of applicant and provide a new process for the approval and certification for social equity and cannabis retail sales licenses.

This act would take effect upon passage.

========
LC006499
========